AMANDA A. WILSON v. HENRY E. WILSON AND OTHERS.
AMANDA A. WILSON v. ARTHUR F. WILSON AND OTHERS.
AMANDA A. WILSON v. MERRITT W. BABCOCK
AND OTHERS.[1]

December 30, 1921.

Nos. 22,549, 22,551, 22,550.

**Partition—findings of court sustained.**

1. In an action for the partition of certain real property, based on the claim by plaintiff of an undivided interest therein as the common law wife of the former owner, now deceased, it is *held*, that the findings of the trial court to the effect that the decedent was not the owner of the property at the time of or subsequent to the common law marriage, and that deeds executed by him prior thereto were de-

[1]Reported in 186 N. W. 126.

livered and made effective at the time of execution, are not clearly against the evidence and must be sustained.

No error.

2. The record presents no reversible error.

Three actions in the district court for Blue Earth county for the partition of real property. The cases were tried together before Comstock, J., who made findings and ordered judgment in favor of defendants dismissing the complaints. From the judgments entered pursuant to the orders for judgment, plaintiff appealed. Affirmed.

*Herbert T. Park* and *Rockwood & Mitchell,* for appellant.

*S. B. Wilson,* for respondents.

BROWN, C. J.

These several actions for the partition of certain real property, involving the same general facts, were tried together, resulting in judgment for the defendants in each, from which plaintiff appealed.

It appears that Edward F. Wilson was formerly the owner of the property, consisting of farm lands in Blue Earth county. On June 9, 1903, he conveyed 160 acres thereof to his son Arthur F. Wilson, defendant in one of the actions, and by deed bearing date April 2, 1903, and a second deed bearing date June 8, 1903, and a third bearing date June 11, 1903, he conveyed 240 acres of the land to his son Henry E. Wilson, defendant in the first entitled action. On March 22, 1909, Henry E. Wilson conveyed 80 acres of the land so conveyed to him to Merritt W. Babcock, defendant in the third action. Immediately following the execution and delivery of the deeds, Arthur and Henry entered into the possession of the tracts conveyed to them and have since continuously lived thereon with their families, making improvements, and paying the taxes assessed against the same, except that Henry surrendered to Babcock the 80 so sold and conveyed to him. One of the considerations for the deeds to the sons was their agreement to pay Wilson annually one dollar per acre for the land conveyed to each during the remainder of his

life. They have complied with that agreement, though it was not the sole consideration supporting the transaction.

Plaintiff's alleged title and interest in the lands and her asserted right to a partition thereof are founded on the claim that prior to the execution and delivery of the deeds just referred to she had become, and thereafter and until his death in 1917 remained, the common law wife of the senior Wilson; that by such relation she became vested with an interest in the lands prior to the transfer, to which she did not assent in writing or otherwise. She fixed January 25, 1903, as the date of the origin of those relations. Defendants offered evidence tending to show that the relationship, to constitute a common law marriage, did not commence, if at all, until July 4, 1903. In response, and to obviate the effect of that evidence, plaintiff further claims that the deeds, though executed prior to that date, were not in fact delivered until long thereafter, therefore that her rights as the widow of Wilson have priority, though July 4 be conceded the date of the marriage. Wilson died intestate.

Upon the issues thus presented the trial court found among other things:

"That no marriage ceremony was ever had by and between said Edward F. Wilson and Amanda A. Notestein (plaintiff), and that no agreement in writing or in the presence of witnesses was ever entered by and between said persons, but that from and after a time shortly subsequent to the 4th day of July, 1903, the said Edward F. Wilson and Amanda A. Notestein continuously lived together in common association in the same dwelling and in outward appearance and in their relations to other persons conducted themselves habitually as husband and wife."

The court further found that the transfer of the land by Wilson was made for a good and valuable consideration, and in consummation of a prior verbal agreement to do so upon certain conditions, not necesary to here state, which the sons had kept and performed. The findings of the court are also to the effect that the deeds were delivered to the grantees on the date of the excution. From all of which the court concluded as a matter of law that plaintiff has no

interest in the lands, and judgment was ordered that she take nothing by the actions, and that defendants have judgment dismissing the complaint in each with costs of suit.

The assignments of error present, among others, the questions: (1) Whether the findings of the trial court to the effect that the rights of plaintiff as the common law wife of decedent originated on July 4, 1903, and not prior thereto; and (2) whether the finding that the deeds were delivered on the date of execution, are sustained by the evidence.

Our conclusion is that the findings have the necessary support in the evidence, and, as the facts found control the result in this court, we pass without comment other general but not decisive points discussed in the briefs. The findings are sufficiently specific in both form and substance.

1. It appears that, at the time of the transfer and conveyance of the land, Wilson was and for some three years prior thereto had been a widower, residing with his grown children in Blue Earth county. In December, 1902, a few months before the date of the deeds, he advertised in the newspapers for a middle aged well-to-do wife. The advertisement was signed in the name of "E. F. Potter." It came to the notice of plaintiff and she answered it by letter. This was followed by correspondence, which resulted, after Wilson had made known his true name, in a meeting of the parties for verbal negotiations at the residence of plaintiff in Minneapolis at about Christmas time in December, 1902. It is claimed by plaintiff that, soon after this personal conference, it was mutually agreed between the parties that they would become husband and wife; that in the latter part of January, 1903, the agreement was consummated and put into operation and effect, and that they then commenced living together in that relation. Both parties appear to have been of good character, though they adopted an unusual method of forming the marriage contract between them. Plaintiff had a son and daughter, both married, while defendant had two sons and two daughters likewise married. At the time in question plaintiff was 53 and Wilson 73 years of age, though Wilson thought, as disclosed by one of his letters to plaintiff, that by an application of a little

hair dye he could measure up in appearance with a man of 40 years. There was, as found by the trial court, no written agreement of marriage, nor one entered into in the presence of witnesses, and whatever arrangements were made on the subject are shown only by the acts and conduct of the parties in their continued living together and holding themselves out as husband and wife. There was a public announcement of a marriage between them on July 4, 1903, and from that date the relatives, particularly the sons and daughters of Wilson, supposed that a marriage in fact had been entered into, and the situation was accepted by them in that light; the son of plaintiff understood that a wedding had taken place prior to that date. There is evidence of statements claimed to have been made by plaintiff to the effect that the marriage relation was entered into on that date, and it further appears, without dispute, that a honeymoon trip was then taken by the newly-weds on a river steamboat in celebration of the happy event. One of the local newspapers published in the vicinity of Wilson's residence announced the wedding at the time, though none had in fact taken place. But subsequent to the death of Wilson plaintiff claimed an earlier date for the commencement of their relations, a date prior to the execution of the deeds conveying the land to defendants; each of which contained the recital or statement that Wilson was then a single man.

We need not go further into the facts or discuss the evidence in detail; it is quite voluminous; what has been said covers the case in a general way, and that is sufficient, for we are not required to demonstrate the correctness of the conclusions of the trial court in respect to its findings of fact. Carver v. Bagley, 79 Minn. 114, 81 N. W. 757; Barnum v. Jefferson, 109 Minn. 1, 122 N. W. 453. Upon the pivotal question, the date of the alleged marriage, the evidence is not clear; it is conflicting, presenting a simple question of fact unmixed with legal entanglements. We have considered it in the light of the arguments of counsel with care and are unable to reach the conclusion that the view taken by the learned trial judge is either clearly or as sometimes expressed manifestly against the evidence. The finding, therefore, that the marriage agreement between the parties was not entered into until after July 4, 1903, must be

sustained. The evidence will not justify interference by this court.

2. Since the rights of plaintiff accrued subsequent to that date, we have only to inquire in taking leave of the case whether the deeds, previously executed, were delivered to the grantees at that time, or rather whether the findings of the trial court, that they were delivered at the time of the execution, are clearly against the preponderance of the evidence. We find, as upon the other question no sufficient reason for interference with the conclusions of the trial court. As heretofore stated, one of the considerations for the deeds was an agreement by the grantees to pay Wilson during his life an annual rental for the land equal to one dollar per acre. That agreement was not expressed in the deeds, nor in any other writing, so far as the record informs us. But it was performed by defendants, of which there is no dispute. But several years after the deeds were executed, for some reason not clearly disclosed, Wilson requested that the agreement be put in writing. That was satisfactory to all concerned and in November, 1908, an attorney was employed for that service. A written contract was prepared, in which the prior execution of the deeds to both Henry and Arthur was referred to coupled with the statement "and said deed has not been delivered until this day." This counsel for plaintiff urges with some force as a clear admission that the deeds had not previously been delivered. Some letters written by Arthur to his father are referred to for like admissions. But we think that the evidentiary force of the evidence was for the trial court. It is not clear why the recital of non-delivery of the deeds was inserted in the contract. It does not appear that any controversy existed on the subject, and the object of reducing the rental agreement to writing was evidently to provide specific written evidence on that subject. From the testimony of defendants, whose veracity was for the trial court, it is clear that the deeds had in fact previously been delivered, and they testified that the clause referred to was not under discussion at the time, and they did not know that it had been incorporated in the writing. The recital is no doubt evidence in support of the contention that delivery of the deeds was not made until the agreement was so reduced to writing, but clearly not conclusive. In fact

it would seem no more conclusive on the facts disclosed, than the recital of the deeds that Wilson on the date thereof was a single man. Of course that recital is not binding on plaintiff, and perhaps not evidence against her, though, brushing aside technical rules, it indicates Wilson's view of the relations between them at that time. The letter written by plaintiff's daughter in February, 1903, Exhibit 5, was properly excluded as hearsay, and incompetent.

This covers the case and all that need be said in disposing of the appeal. The evidence has been carefully considered and found not clearly against the findings of the trial court and there the matter must rest; the record presents no reversible error, and the judgments appealed from are therefore affirmed. It is so ordered.