## JACOB WOLL v. E. G. HENSEL AND ANOTHER.[1]

May 16, 1930.

No. 27,810.

*Daniel J. Hollihan* and *Joseph Harkness,* for relator.

*Sexton, Mordaunt & Kennedy,* for respondent employer and Great American Indemnity Company, his insurer.

HILTON, J.

Certiorari to review an order of the industrial commission denying compensation to relator.

Relator on January 15, 1929, was and for six months prior thereto had been in the employment of E. G. Hensel as a teamster and freight handler at a weekly wage of $21. He was 59 years of age and weighed 210 pounds. His claim was that when on the Western Stamping & Manufacturing Company job, while he and another employe were lifting a heavy box weighing over 300 pounds to a height of three feet and then rolling it on top of other freight in a freight car, he received the injury complained of, causing a hernia

[1]Reported in 230 N. W. 813.

on the right side. The referee refused compensation on the ground that while in such employment relator did not suffer an accidental injury to his person arising out of and in the course of his employment with respondent. The commission affirmed the decision of the referee.

We recognize and adhere to the oft-repeated holding of this court that on appeal here in a case such as this, if "upon a fair consideration of all the evidence and the fair and reasonable inferences which may be drawn therefrom, reasonable minds might reach different conclusions, a reasonable conclusion so arrived at must be sustained." The findings must stand unless clearly and manifestly contrary to the evidence. 1 Dunnell, Minn. Dig. (2 ed.) § 411; Engsell v. Northern Motor Co. 174 Minn. 362, 364, 219 N. W. 293.

Another rule just as well established is that the trier of facts cannot disregard the positive testimony of an unimpeached witness unless and until its improbability or inconsistency forms a reasonable ground for so doing, and this improbability or inconsistency must appear from the facts and circumstances disclosed by the record in the case. Such testimony cannot be arbitrarily disregarded. O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, and cases cited. In the light of these two rules we consider the evidence.

Relator's testimony was that at the time of the lifting of the box in question he suddenly felt a sharp pain "like needles" in his right side and threw up his hand. Upon driving home the jar of the wagon hurt him so that he had to raise his right leg to ease the pain. On arriving home an examination showed a swelling and a lump as large as a good sized nut; that although the pain was intermittent, it daily grew worse during the following two weeks in which he continued to work. At noon on January 29 he went to his employer's home and told him of the two weeks' pain in his right side and that he could not work any more and was going to a doctor. Mr. Hensel took him to Dr. Plondke, who made an examination that disclosed a rupture on both sides. At that time the right side was swollen and the sac was about the size of a lemon.

He had never suffered any pain in the region before. No complaint had been made by Woll as to his left side; it did not pain him. He had not consulted a doctor since 1921, at which time he had a cold or a slight attack of the flu. On January 17, he complained of his injuries to a fellow employe who was helping him lift the box on January 15. This employe could not be found at the time of the hearing. The hospital record made by Dr. Colp at the time relator went to the hospital corroborated his testimony. Relator did not know that he had a rupture until so told by Dr. Plondke. On February 1 Dr. Plondke performed the usual operation for double hernia. The patient was discharged on February 16. A phlebitis of the right leg developed soon after—not an unusual happening following a hernia operation. The undisputed testimony of Dr. Plondke was that the ruptured condition he found would follow a strain or injury and that this injury might have occurred two or three days before or two or three weeks before the examination; that without doubt it was recent. There were no adhesions.

Woll's sister, with whom he lived for many years, testified that he had never had any trouble of the kind in question. Mrs. Peterson (not a relative) at whose home Woll had lived for four years, testified that Woll stated to her the night of the 15th the full details of his condition and how the injury occurred; that he was ill, ate no supper, and went to bed early; that he complained more or less right along, and when he went up or down stairs he held his side with his hand and seemed to be in pain; that as far as she knew he was all right before the 15th. During the two weeks when at home he at times seemed to be in misery. There was no testimony to the contrary.

Respondents claim that in a written statement given to the claim agent of the insurer on January 29 there appeared declarations inconsistent with relator's testimony given at the hearing. A careful examination of this statement discloses that these inconsistencies were trivial and that in the main the statement is corroborative of Woll's testimony. The claim agent interrogated Woll and from the answers framed the statement. It does not appear that Woll read

the statement before signing it. The only witness offered by respondents was the employer, Hensel. He testified that Woll came to his home at noon January 29 and complained of a pain in his right side; that he was in pain and was crying. Hensel did not ask Woll as to the cause of his trouble. Respondents attempt to make much of Hensel's statement that Woll never told Hensel of the incident upon which he now relies; that the hurt and pain immediately followed the lifting of the heavy box. Woll said that he saw Hensel a few times after the injury but that they never got together for a conversation. He also testified that on January 29 he told Hensel that he had had the pain in his right side for two weeks, since he worked on the job. The circumstance that Woll did not hunt up Hensel and report the accident is not important.

Upon this showing and applying the rules above referred to, it is clearly manifest that the finding of the referee and commission cannot be sustained; it is clearly and manifestly contrary to the evidence.

An attorney's fee of $75 is allowed.

Reversed.