## HELEN WILLIAMS v. EDWARD JUNGBAUER AND ANOTHER.[1]

February 9, 1934.

No. 29,783.

*Sanborn, Graves & Andre,* for appellant.

*Oppenheimer, Dickson, Hodgson, Brown & Donnelly,* for respondents.

[1]Reported in 252 N. W. 658.

*HOLT, Justice.*

Plaintiff had a verdict in this action to recover for the death of decedent by wrongful act. Defendants' motion for judgment notwithstanding the verdict was granted, and judgment was entered, from which plaintiff appeals.

The defendant Edward Jungbauer owned a Ford sedan, used to convey his children to and from school. His son, defendant Edward Paul Jungbauer, was driving the Ford at the time involved, and when reference is hereinafter made to Jungbauer the son is meant. On March 7, 1932, about eight o'clock in the morning the decedent, Mr. Williams, was driving a Ford coach east on Fuller avenue in St. Paul, approaching St. Albans street, as Jungbauer, driving south on St. Albans street, was approaching Fuller avenue. It was a clear, cold morning with some snow or ice on the streets. The two streets intersect at right angles and are practically without grade where the cars traveled immediately before the collision. Going south on St. Albans street after crossing Fuller avenue there is a nine per cent upgrade. Jungbauer's sister was in the back seat. Her destination was St. Joseph's Academy, a few blocks further on. Seated to the right of Jungbauer was Mr. McNamara, a senior at the University of Minnesota. Jungbauer was also a student there, and it was his custom to call for his neighbor McNamara every morning, then take his sister to the academy, and thereupon go to the university. The intersection mentioned is in a closely built residential district. The dwelling at the northwest corner of the intersection fronts Fuller avenue and sits back 29 feet from the curb line. That dwelling would interfere with the view the drivers and occupants of these two cars had of each other's approach.

The trial court came to the conclusion, as appears from the memorandum accompanying the order granting judgment, that as a matter of law Mr. Williams' negligence proximately contributed to his death. In determining whether or not the learned trial court was right in so ruling, we must have in mind that defendants had the burden of proving the contributory negligence pleaded; and that in order to do so in this case, where the one charged with contributory negligence is dead, they must overcome the presumption

that plaintiff's decedent was in the exercise of due care when the collision occurred which caused his death. We also have to consider that Mr. Williams had the right of way, unless Jungbauer was first in the intersection to such extent as to acquire the right of priority. The rule of this presumption of due care is applied in Anderson v. Duluth & Iron Range R. Co. 116 Minn. 346, 133 N. W. 805; Nelson v. N. P. Ry. Co. 119 Minn. 347, 138 N. W. 419; Klare v. Peterson, 161 Minn. 16, 200 N. W. 817, 818; Fink v. N. P. Ry. Co. 162 Minn. 365, 203 N. W. 47. As said in Klare v. Peterson [161 Minn. 18]:

"The presumption is comparable to that of right conduct. It may be overcome by direct proof or by facts and circumstances which lead to the conclusion that due care was not exercised."

Of the three persons in Jungbauer's car, Mr. McNamara had the best view and opportunity to observe Mr. Williams' approach. He estimated that when the Jungbauer car was within five to ten feet of where the north sidewalk of Fuller avenue would intersect St. Albans street Williams' car was 90 to 120 feet west of the intersection, approaching at high speed. All three occupants of the Jungbauer car testify that he drove into the intersection at a speed of 18 to 22 miles per hour. Mr. McNamara testified that he did not appreciate Mr. Williams' high speed until after the Jungbauer car was in the intersection, and that he then subconsciously estimated the speed of Williams' car at 35 to 45 miles per hour; that each driver swung away from the other car at the moment of collision, but the front left corner of Williams' car struck the Jungbauer car at the door where the witness sat. Jungbauer and his sister corroborate Mr. McNamara. The only other person who saw the collision and observed the speed of Mr. Williams' car just prior thereto was Mr. Weiden, then a 19-year old high school student. He was in the hall of the dwelling next to the corner house above referred to, looking out of a small window in the front door, when attracted to the Williams car because of the high speed at which it was passing. He changed his position so as to keep the car in sight and saw the Jungbauer car come into view and the collision. He estimated the speed of the Williams car at 40 miles an hour

until the brakes were applied about ten feet from the point of contact. Every eyewitness testified that the Williams car came into the intersection at a speed exceeding 30 miles per hour. The three witnesses in the Jungbauer car agree that it was in the intersection a substantial distance ahead of the car of Mr. Williams. There is no inherent weakness in the testimony as to the speed. The witnesses were unusually intelligent and observing, and all, except perhaps Miss Jungbauer, experienced automobile drivers. A reading of their testimony leaves the impression that they endeavored to answer every question accurately and truthfully without any effort to shade or color the answer for or against either party. Not only is there no testimony to oppose that given, but the condition and place in which the cars were left by the collision corroborate defendants' witnesses. The left front corner of the Williams car, fender, wheel, and bumper, proves that it struck the Jungbauer car, and the latter shows that the blow was received at the post between the two doors, on its right side, crushing in the running board there. The force of the collision carried the Jungbauer car a little south of the southeast corner of the intersection, where it tipped over against the snow on the curb line. The Williams car spun around and came to rest with the rear against the stone slab covering the manhole on the southeast corner of the intersection. The glass on the left door was out, but the doors were closed, the left not completely. The head of Mr. Williams was against the slab and under the rear wheel. He was dead. No one saw how or where he was pitched out of the car. Here the testimony of four eyewitnesses, the only witnesses obtainable, agrees that Mr. Williams came into the crossing at a speed exceeding 30 miles an hour. Reasonable minds can draw no other conclusion than that this excessive and unlawful speed proximately contributed to the collision. Having the positive testimony of several unimpeached and intelligent eyewitnesses, who had opportunity to observe the speed and approach of Mr. Williams, that it was unreasonable and unlawful, the presumption of his due care must be held overcome and destroyed. This testimony was substantially without conflict and had no inherent improbability. The physical facts disclosed

by the photographs of the cars after the accident corroborate the oral testimony. In that situation the rule must be applied that "the court or jury cannot disregard the positive testimony of an unimpeached witness unless and until the record shows such improbability or inconsistency as furnishes a reasonable ground for so doing." O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, and the many cases therein cited. See also the later case of First Nat. Bank v. Van de Putte, 187 Minn. 96, 244 N. W. 416. Appellant relies on Jasinuk v. Lombard, 189 Minn. 594, 250 N. W. 568. There the plaintiff's decedent, a pedestrian, was struck by the defendant's car as he was crossing a street at a place other than the cross-walk. The three eyewitnesses were some 150 to 160 feet away. It occurred after dark. The defendant there unsuccessfully contended that the presumption of due care did not avail the plaintiff when eyewitnesses were obtainable and testified. The testimony of the eyewitnesses in that case did not conclusively show that the plaintiff's decedent violated any law or statute in crossing the street where he did cross or in the manner in which he so did.

The judgment is affirmed.

*DEVANEY, Chief Justice,* absent in attendance upon board of pardons, took no part.