## EVA M. DOWNING v. H. E. MAAG, ADMINISTRATOR, SUBSTITUTED FOR WARD F. SENN, DECEASED ADMINISTRATOR OF ESTATE OF HARRY MOORE, AND OTHERS.[1]

No. 33,452.

July 2, 1943.

[1]Reported in 10 N. W. (2d) 778.

*Strong & Strong* and *Paul J. Thompson,* for appellant.

*Fred W. Putnam,* for respondents Lillian White Thompson and Florence White Duffield.

*R. H. Fryberger,* for respondent Gladys Moore Straub.

*H. E. Maag,* for respondent Ward F. Senn.

LORING, JUSTICE.

This is an action against the administrator of the estate and the heirs of Harry Moore, deceased, for specific performance of an alleged oral contract whereby Moore agreed to devise his estate to plaintiff. The trial court refused to grant specific performance on the ground that plaintiff had not sustained the burden of proof in establishing such a contract, and on the further ground that she had an adequate remedy at law. Plaintiff appeals from an order denying her motion for a new trial.

Plaintiff and Harry Moore became acquainted in 1899. At that time plaintiff was married to a Dr. Hunt, from whom she was subsequently divorced. One daughter, Marguerite Downing, was born of this marriage. Moore was then employed as deputy clerk in the municipal court of Minneapolis. He was admitted to the bar in 1892 but never practiced law. Apparently Moore and plaintiff were "keeping company," as he gave her presents, including a ring, which she has worn ever since. Moore was unemployed from 1904 to 1909. During that time they saw each other regularly. Plaintiff was a dramatic entertainer and in 1907 made a trip to Europe in connection with her work. Before going on this trip, she made arrangements for Moore to occupy her room, paid part of the rent in advance, and gave him money to assist him until he could secure employment. While in Europe plaintiff wrote a number of letters to Moore, which were found in his room after his death. When Moore again secured employment in 1909, plaintiff bought clothes

for him so that he would be presentable for work. From that time on the relationship between these two people was very close. Moore roomed only a short distance away from plaintiff. He regularly ate his evening meal at her residence and spent a great deal of time there in plaintiff's company.

■ As we view the record, the evidence is conclusive against the findings of the trial court. The contract to make a will is alleged to have been made in June 1918. At that time plaintiff was planning to go to France in her capacity as a dramatic entertainer. Moore earnestly opposed her going, as he apparently feared that she might meet someone else, and "if he lost her he lost everything." Concerning Moore's reaction to plaintiff's proposed trip to France, the witness Lewis, who was present at a conference between plaintiff and Moore, testified that at that conference: "He said her future was his responsibility, and he wanted her to promise not to go; and *if she would promise not to go, he said he would will everything he had to her.*" (Italics supplied.) Marguerite Downing, plaintiff's daughter, testified that plaintiff considered the opportunity to go to France might be a "stepping-stone" to a career, but that Moore was opposed to it, that he "had plans for her future," and that "what he had he considered hers." The same witness testified that in 1934 Moore stated in a conversation that "Eva's [plaintiff's] future was taken care of in case she survived him." The witness White testified that in 1936 she had a conversation with Moore concerning his insurance, pension, and savings and that he said that "anything that might be left after was for Eva"; and after discussing the price of some stock that he owned, Moore said, "That has held up pretty well, I hope it continues to, because *that along with my savings and investments are for Eva.*" (Italics supplied.) The witness Riemann, who was an employe of the Municipal Employees' Retirement Association of which Moore was a member, testified that in 1934 she talked with him about his retirement plan, that she told him there was a plan, other than the one he had selected, whereby he could take a smaller pension and provide a lump sum payment "to an interested party," and that Moore said,

"You are thinking of Miss Downing, aren't you?" and, "Well, this plan will pay me the most, if I understand it, and that will give me working funds, *and my savings and investments will adequately take care of Miss Downing, in case.*" (Italics supplied.) This witness further testified: "He said to me that he felt satisfied that he had taken the wisest plan because he said, 'I have moneys and bonds that will take care of—' he always called her Miss Downing. He said, 'If she is careful, it will see her through all right.'" A Mrs. Elwood testified to the same effect.

These witnesses are unimpeached, and their testimony is uncontradicted. In such a case, the rule in this state is clearly stated in O'Leary v. Wangensteen, 175 Minn. 368, 370, 221 N. W. 430, 431:

"The rule is well established in this state that the court or jury cannot disregard the positive testimony of an unimpeached witness unless and until its improbability or inconsistency furnishes a reasonable ground for so doing, and this improbability or inconsistency must appear from the facts and circumstances disclosed by the record in the case. It cannot be arbitrarily disregarded by either court or jury for reasons resting wholly in their minds and not based upon anything appearing in the trial."

The O'Leary case fully reviews the law on the question, and this court has consistently reaffirmed it. See Manley v. Harvey Lbr. Co. 175 Minn. 489, 221 N. W. 913; Koppe v. Hilton & Thompson, 176 Minn. 508, 223 N. W. 787; Bank of Howard Lake v. Veigel, 177 Minn. 187, 224 N. W. 841; Woll v. Hensel, 180 Minn. 353, 230 N. W. 813; First Nat. Bank v. Van de Putte, 187 Minn. 96, 244 N. W. 416; Williams v. Jungbauer, 191 Minn. 16, 252 N. W. 658; Althoff v. Boland, 195 Minn. 541, 263 N. W. 797; Ewer v. Coppe, 199 Minn. 78, 271 N. W. 101.

In Wold v. Wold, 138 Minn. 409, 165 N. W. 229, the question of uncontradicted, unimpeached, and credible testimony was not presented. The trial court had accepted the unsupported testimony of plaintiff's sister to the contract to make a will. The comment made by this court with reference to her testimony is not a holding

that her testimony might be rejected. We held that the evidence was sufficient to support the finding. No other question was involved. Moreover, Wold v. Wold was decided 11 years before O'Leary v. Wangensteen, 175 Minn. 368, 221 N. W. 430, *supra.*

Maher v. Duluth Yellow Cab Co. 172 Minn. 439, 215 N. W. 678, was also decided before O'Leary v. Wangensteen and did not involve the question here presented. In that case the question before the court was whether or not circumstantial evidence supported a finding. Dege v. Produce Exchange Bank, 212 Minn. 44, 2 N. W. (2d) 423, was a case where oral testimony was not contradicted by direct testimony, but documentary evidence was introduced from which the jury might have reasonably drawn a conclusion opposite to the direct testimony. It was there specifically held that the rule of O'Leary v. Wangensteen did not apply. In Erickson v. Erickson & Co. 212 Minn. 119, 125, 2 N. W. (2d) 824, the testimony rejected by the industrial commission was impeached by the witness's prior statements and by inconsistency in his testimony. In Weinstein v. Schwartz, 204 Minn. 189, 283 N. W. 127, though the defendant's testimony was without extraneous contradiction, it was held that it fell outside the rule of O'Leary v. Wangensteen because the jury might reasonably have attributed defendant's obvious willingness to be worsted to a desire that his mother-in-law, plaintiff, collect damages from his insurer.

■ The fact that the witnesses were acquainted with or related to the plaintiff does not in any way impeach them or permit the trier of fact to disregard their testimony if they are otherwise unimpeached and the testimony is uncontradicted and not improbable or inconsistent. O'Leary v. Wangensteen, *supra;* Olsen v. Hoffmann, 175 Minn. 287, 221 N. W. 10.

■ In the case at bar, since plaintiff's witnesses are uncontradicted and unimpeached, the only question is whether their testimony, from the facts in the record, is improbable or inconsistent. We cannot escape the conclusion that it is neither. The record disclosed that Moore was an unusual character. He was taciturn and reticent. His fellow employes knew little about him. He seldom

spoke of his private life. For over 30 years he worked in the same office, hardly speaking to his fellow employes. Aside from lodge meetings, his only social life was at plaintiff's home, where he regularly ate his supper and spent the evening reading. He had no friends of his own and was completely dissociated from his relatives. Each morning before going to work he called plaintiff by telephone from a cigar store where he regularly bought his morning cigars. When he was out of work plaintiff bought him clothes and gave him money. At one time he had given her an engagement ring. The testimony that he promised to make a will leaving his earthly possessions to the one person with whom he was intimately acquainted and with whom he was closely associated for 42 years is wholly probable and entirely consistent. The trial court could not have reached the conclusion it did without rejecting all the testimony on the issue of the formation of the contract.

■ The fact that Moore was a lawyer does not introduce any impeaching circumstance into the case. Moore was admitted to the bar in 1892 and never practiced law. Lawyers are notoriously careless about their own legal affairs. "Blacksmiths' horses and shoemakers' wives go barefoot." We do not believe that the fact that Moore was admitted to the bar raised any inference that would be decisive of the issue here.

■ Respondents' contention that the contract was without consideration is not well taken. While it is true that the relationship between plaintiff and decedent remained substantially unchanged, plaintiff gave up her plans to go abroad and continued the previous relationship. This forbearance was sufficient consideration to support the contract.

■ Nor does plaintiff have an adequate remedy at law. The fact that decedent paid for his meals is not enough, in the face of the overwhelming evidence that he was more than a mere boarder. Notwithstanding the fact that he had a bedroom elsewhere and that their relations were entirely platonic, he was in effect provided with a home by plaintiff, and the payments he made for board cannot be considered adequate to defeat plaintiff's equitable remedy.

A contract to make a will will be specifically enforced when plaintiff's services are of such a peculiar or personal nature that compensation is not measurable in money. Robertson v. Corcoran, 125 Minn. 118, 145 N. W. 812; Colby v. Street, 146 Minn. 290, 178 N. W. 599; Morrow v. Porter, 161 Minn. 396, 202 N. W. 53; Hanson v. Bowman, 199 Minn. 70, 271 N. W. 127; Jannetta v. Jannetta, 205 Minn. 266, 285 N. W. 619; Herman v. Kelehan, 212 Minn. 349, 3 N. W. (2d) 587. The criterion for testing whether such services are measurable in money is well stated in Olsen v. Dixon, 165 Minn. 124, 127, 205 N. W. 955, 956:

"* * * if the services might have been rendered by a stranger as satisfactorily as by the promisee and the relations of the parties are not of a peculiarly personal or domestic nature, the promisee has a claim against the promisor for the reasonable value of the services and nothing more."

By this test, plaintiff's services, consisting of care and companionship for a period of 42 years, cannot be measured pecuniarily.

Simonson v. Moseley, 183 Minn. 525, 237 N. W. 413, is distinguishable on the facts. There, plaintiff did not surrender her prospects in life for decedent, she was married and did not perform peculiar or domestic services for him. In the case at bar plaintiff subordinated her career and her personal prospects to the care and companionship of Moore for the best years of her life. Such services are not measurable in money. Plaintiff has no adequate remedy at law.

The order of the trial court is reversed and the case remanded with directions to enter judgment for plaintiff.

THOMAS GALLAGHER, JUSTICE (dissenting).

A careful examination of all the evidence presented, together with the surrounding facts and circumstances, leads to the conclusion that there is here involved a simple fact question. There is no doubt that if the testimony presented by plaintiff were found to be true and inherently probable it would establish a contract, with adequate consideration for same. We have upheld contracts based

upon similar evidence at various times. Wold v. Wold, 138 Minn. 409, 165 N. W. 229; Colby v. Street, 146 Minn. 290, 178 N. W. 599; Happel v. Happel, 184 Minn. 377, 238 N. W. 783. However, we are confronted with the well established rule that where the trial court's findings are challenged on appeal they are not to be set aside unless clearly and manifestly against the weight of evidence or without reasonable support therein. Sommers v. City of St. Paul, 183 Minn. 545, 237 N. W. 427; G. N. Ry. Co. v. City of Minneapolis, 142 Minn. 308, 172 N. W. 135.

Here there is reasonable support for the findings, although, had the trial court found differently, such contrary findings might be sustained under the same rule. While the testimony of plaintiff's witnesses is undisputed and reasonably definite, nevertheless there are elements in connection with the case which make the weight of such testimony a question of fact for the trial court. Part of it came from plaintiff's daughter, who might be presumed to be interested in her mother's cause. Other portions were given by Mrs. Lewis, plaintiff's friend since 1907. Decedent was an attorney and, as such, presumably familiar with the law relative to the execution of wills and the rules governing descent of property. Shortly before his death his attention was directed to his old will, and he made no attempt to revoke it. In his work in the municipal court he was in daily contact with lawyers and must have been fully cognizant of the difficulties which would confront plaintiff if he did not make the will which plaintiff contends he had agreed to make. He paid plaintiff generously for the meals she furnished him. All of these facts and circumstances appear to make the weight of the testimony given by plaintiff's witnesses a matter for determination by the triers of fact.

This rule is noted in Wold v. Wold, 138 Minn. 409, 415, 165 N. W. 229, 231, where the court, in referring to the testimony of a witness who was a sister of the claimant, stated: "whether she was worthy of belief was a question for the trial court."

Again, in Holter v. Laugen, 157 Minn. 90, 93, 94, 195 N. W. 639, 640, the rule is set forth as follows:

"The trial court might well have found the other way, but he found as he did. He is a man of judicial ability and of sound discretion. It is obvious that he fully appreciated his responsibility in the matter. This court is not the trier of fact. We peruse the facts to ascertain if there is evidence to support the findings of the trial court, but when we reach that point our prerogative ceases.

*   *   *   *   *

"* * * The learned trial court having decided that the proof was insufficient, we are required to, and do, hold that the evidence is not manifestly and palpably in favor of the plaintiff.

*   *   *   *   *

"* * * He had the benefit of seeing and hearing the witnesses. He saw the uncertainty as to whether the minds of these contracting parties ever met upon any agreement beyond the legal adoption of the plaintiff."

This case does not appear to fall within the rule requiring the triers of fact to find as true undisputed evidence inherently probable, for here, when all the evidence is considered, many facts and circumstances are found from which different minds might reasonably draw different conclusions as to the ultimate facts. The difference of opinion existing here, and existing between this court and the trial court, is illustrative of this principle. Dege v. Produce Exchange Bank, 212 Minn. 44, 2 N. W. (2d) 423; Erickson v. Erickson & Co. 212 Minn. 119, 2 N. W. (2d) 824; Maher v. Duluth Yellow Cab. Co. 172 Minn. 439, 215 N. W. 678; Weinstein v. Schwartz, 204 Minn. 189, 283 N. W. 127.

Mr. Justice Magney, not having been a member of the court when this case was argued and submitted, took no part in its consideration or decision.

Upon Application for Reargument.

On July 30, 1943, the following opinion was filed:

Per Curiam.

But one matter deserves comment on the petition for rehearing.

Respondents belatedly assert that they want a new trial in order to establish that the contract to make a will was against public policy, because, as they assert, it provided that the plaintiff agreed as a part of the consideration for the contract not to "marry anyone else during decedent's lifetime." It is true that the verified complaint contains such an allegation, but defendants in their answers all denied this allegation and made no effort to prove that the contract, as conclusively established by the testimony of the plaintiff's witnesses, contained any such provision. No witness so testified, and the defendants refrained from inquiring on cross-examination as to whether there was any such provision in the contract. The plaintiff at the close of the testimony sought to have the allegation stricken from her complaint, but the trial court denied the motion. The defendants made no argument in support of the contention of illegality either in their brief or the oral argument here.

Since the evidence is conclusive against their contention and they have had their day in court, the petition for rehearing is denied.

