### In re ESTATE OF Julia TROBAUGH, Deceased.

### No. C2-85 827.

Court of Appeals of Minnesota.

Jan. 7, 1986.

Alan W. Weinblatt, Weinblatt and Nadler, P.A., St. Paul, for appellants Terry and Genevieve Trobaugh.

Gordon I. Sinclair, Sinclair and Pardee, for respondents Norman Trobaugh and Robert Trobaugh.

Heard, considered and decided by LESLIE, P.J., and WOZNIAK and HUSPENI, Judge.

## OPINION

LESLIE, Judge.

This appeal is taken from an order of the Ramsey County Probate Court admitting to probate the Last Will and Testament of Julia Trobaugh dated October 14, 1981 and rejecting appellant's claim of the existence of an oral contract. We affirm.

## FACTS

Julia Trobaugh died on December 4, 1984. Appellant Terry Trobaugh is decedent's grandson, and appellant Genevieve Trobaugh is Terry's spouse. Respondents Norman Trobaugh and Robert Trobaugh are decedent's sons. During September 1984, decedent allegedly contacted appellants and suggested that they move from their rented house in Wisconsin to live with her in her home in St. Paul. Appellants claim that decedent agreed to an arrangement whereby in exchange for their taking care of her, she would make a will bequeathing her house to them. The agreement provided that appellants would make payments on a contract for deed to decedent until her death, and that she would forgive the outstanding debt in her will. Appellants allege that because of that agreement, they moved into decedent's house on September 19, 1984.

Before moving in with decedent, appellant Terry Trobaugh made an appointment for decedent to see an attorney, Steven Kufus, to draft a contract for deed and a will. Kufus drafted the documents and mailed them to decedent for her review and signature. Kufus enclosed a letter with the documents that included a disclaimer for decedent's signature. Kufus received the signed disclaimer on November 20, 1984. A line in the body of the letter that referred to the preparation of the contract for deed was crossed out.

Appellants contend that the contract was not signed by decedent or by appellants because respondents met with her to stop her from signing the contract and executing the will. Nevertheless, decedent told appellants that she would later sign the documents without telling respondents. Respondents claim that the contract was not signed because decedent did not want to sell the house to appellants, who allegedly were not properly caring for decedent.

Decedent was admitted to the hospital on November 15, 1984. While in the hospital, she allegedly told a number of people that her house now belonged to appellants, as she desired. After spending ten days in the hospital, decedent moved into a nursing home. On November 25, decedent signed a letter drafted by respondent Norman Trobaugh notifying appellants that the house had to be sold as soon as possible to pay for medical bills and that appellants would have to move out by December 31, 1984. According to appellants, decedent apologized to them for having been persuaded to send the letter, and at appellant's request, decedent signed an agreement drafted by Terry Trobaugh stating that appellants could live in the house as long as they wished if they did not intend to purchase it as planned. A week later, Julia Trobaugh died. When appellants learned that the new will had not been signed, they commenced this action to enforce the contract to make a will.

The trial court found no evidence showing undue influence or interference with a contractual relationship, and these issues are not raised on appeal.

## ISSUES

Did the trial court err in concluding that there was insufficient evidence of an oral contract to make a will?

## ANALYSIS

The trial court concluded that "no evidence of an oral contract to make a Will has been produced to satisfy Minnesota Statute § 524.2–701(3)." That statute reads as follows:

A contract to make a will or devise, or not to revoke a will or devise, or to die intestate, if executed after January 1, 1976, can be established only by (1) provisions of a will stating material provisions of the contract; (2) an express reference in a will to a contract and extrinsic evidence proving the terms of the contract; or (3) *a writing signed by the decedent evidencing the contract.* * * * *

Minn.Stat. § 524.2–701 (1984) (emphasis added). The purpose of this provision is "to tighten the methods by which contracts concerning succession may be proved." Unif. Probate Code § 2–701 comment, 8 U.L.A. 155 (1983).

In this case, the trial court found that decedent told several people that she wished to change her will so that Terry Trobaugh would have her homestead after her death. However, the court found that the only writing to substantiate decedent's intent stated as follows:

"11/29/84

To Whom It May Concern,

It is my wish that Terry and Genny Trobaugh be able to purchase my house at 38 W. Hawthorne Ave. As planed (sic) on a Contract for Deed.

It is also my wish that Terry and Genny be able to live at my house untill (sic) the property is sold, or as long as they wish, if they do not intend to purchase.

(Signature)
Julia Trobaugh

Witness"

Decedent allegedly signed the document on November 29, 1984, within one week of her death.

Appellants' position is that this was not the only writing made by decedent to substantiate the oral contract. Appellants argue that the letter that decedent acknowledged from the attorney who drafted her new will and the contract for deed confirmed the terms of the agreement. In addition, appellants contend that the remaining terms of the agreement were also confirmed in a letter written by decedent to her friend, Mary Kangas. Furthermore, appellants argue that even if this document constituted the only writing, it would be sufficient to comply with Minn.Stat. § 524.-2–701.(3).

■ A contract to make a will must be proved by "clear, positive, and convincing evidence." *Clark v. Clark*, 288 N.W.2d 1, 8, n. 10 (Minn.1979). A trial court's findings of fact will not be disturbed on appeal unless they are clearly erroneous, and we must view the evidence most favorable to the prevailing party on appeal. Minn.R. Civ.P. 52.01; *In re Estate of LeBorius*, 224 Minn. 203, 208, 28 N.W.2d 157, 160 (1947). We hold that the trial court's findings are not clearly erroneous. The only document that the trial court found to substantiate the oral contract was written by Terry Trobaugh shortly after decedent signed the notice evicting appellants. It made no reference to a will and contained no indication of decedent's intent regarding the disposition of the house following her death. The document also made no reference, express or implied, to any contract or agreement concerning the house.

■ The attorney's letter that decedent acknowledged likewise contained no references to a contract to make a will. It evidenced nothing more than the drafting of a will and a contract for deed and the extent to which the attorney gave related advice. Although the acknowledgment re-

ferred to the unexecuted contract for deed, it was insufficient to satisfy Minn.Stat. § 524.2–701(3), which requires a signed writing evidencing an executed contract. As stated previously, the specific purpose of the statute is to limit the methods of proving such agreements.

■ Finally, Mary Kangas testified that decedent's letter to her, which she did not save, stated that decedent "was going to make a new will and she was going to put Terry and his wife to get the house." Even assuming that Kangas' testimony accurately reflected the contents of the letter, it merely stated that decedent intended to leave her house to appellants. There was no reference to any type of contract or agreement to make such a will. In other words, it was not a writing "evidencing the contract." Therefore, we affirm the trial court's determination that the evidence presented by appellant failed to satisfy Minn.Stat. § 524.2–701(3).

Appellants argue that this court should grant specific performance because they fully performed their part of the agreement with decedent. Appellants contend that their performance was sufficient to remove the contract from the statute of frauds and likewise from Minn.Stat. § 524.-2–701(3). *See Ehmke v. Hill*, 236 Minn. 60, 51 N.W.2d 811 (1952) (fraud theory of part performance discussed in context of removing oral contract to transfer land from purview of statute of frauds); *In re Guardianship of Huesman*, 354 N.W.2d 860 (Minn.Ct.App.1984) (same).

Even if the part performance theory were to apply to Minn.Stat. § 524.2–701(3), we find that appellants failed to demonstrate that they fully performed. The supreme court has stated that to compel specific performance of an oral contract to devise land, "there must be *full performance* of the conditions imposed upon the party seeking such a decree." *Zuelch v. Droege*, 238 Minn. 306, 312, 56 N.W.2d 651, 654 (1953) (emphasis added). There was evidence presented that appellants did not provide the minimum care that decedent

expected to receive. There was testimony that appellants did not provide adequate meals, did little to maintain the house, and often left decedent alone. Thus, we believe that if a contract existed here, appellants failed to establish their performance of the conditions imposed upon them by the contract.

Appellant cites us to cases in which specific performance was granted. Those cases, however, involved situations in which the plaintiffs gave up valuable opportunities, spent years working for or caring for the decedent without compensation, or made significant improvements to the property in question. *See Husbyn v. Lunde*, 283 Minn. 74, 166 N.W.2d 333 (1969) (fourteen years of service without compensation other than room and board); *Tjanetopoulos v. Margares*, 256 Minn. 176, 98 N.W.2d 97 (1959) (moved to United States from Greece, learned English, worked for decedent); *Alsdorf v. Svoboda*, 239 Minn. 1, 57 N.W.2d 824 (1953) (lived most of life with decedent, cared for decedent in sickness and in health); *Ehmke v. Hill*, 236 Minn. 60, 51 N.W.2d 811 (1952) (years of uncompensated work, improvements to property, gave up financial opportunities); *Matheson v. Gullickson*, 222 Minn. 369, 24 N.W.2d 704 (1946) (gave up opportunity for marriage and plans to leave country, cared for and worked for decedents for twenty-five years); *Downing v. Maag*, 215 Minn. 506, 10 N.W.2d 778 (1943) (gave up opportunity for acting career, cared for decedent for forty-two years).

Appellants have demonstrated no such detriment. Rather, they obtained from decedent a living arrangement that cost them practically nothing. To the extent they cared for her, they did so for less than two months. We hold that the trial court correctly rejected appellants' challenge to the will that was offered to probate.

### DECISION

The trial court correctly concluded that there was insufficient evidence of an oral contract to make a will to satisfy Minn. Stat. § 524.2–701(3) or to justify granting specific performance.

Affirmed.