JOHN MARTIN, Appellant, vs. HENRY HURLBUT, et als, Respondents.

APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

Where a contract is made for the purchase of goods and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing further remains to be done to the goods, although he cannot take them away without paying the price. But if anything remains to be done on the part of the seller as between him and the buyer, such as weighing, measuring, or counting out of a common parcel, before the goods purchased are to be delivered, until that is done the right of property has not attached in the buyer.

A memorandum of agreement for the sale of certain saw logs, signed by both parties thereto, and which shows that no payment was made at the time it was executed ; that a payment was to be made *down*, that is, before delivery ; that the logs had not then been scaled, and that a portion of the logs, of average quality, were to be retained for stumpage—*Held*, that such instrument was an executory contract, and did not show a completed sale.

J. B. GILFILLAN and D. A. SECOMBE, Counsel for Appellant.

F. R. E. & W. B. CORNELL, Counsel for Respondents.

*By the Court*—ATWATER, J.—This was an action by Appellant to recover five hundred thousand feet of pine logs, or the value thereof, alleged to be $5,257, of which Plaintiff alleged that he was the owner, and entitled to the immediate possession. The complaint alleges that on or about the 16th day of March, 1863, the Defendants became wrongfully possessed of the same, and withhold possession from Plaintiff after demand by him for the same.

Martin v. Hurlbut, et als.

The answer denies title in the Plaintiff, and alleges that prior to and at the time of the commencement of this action, the logs were owned by Henry Hurlbut, one of the Defendants in this action.

There was a jury trial, and a verdict for Defendants.   The case presents a large number of exceptions to the rulings upon the evidence offered, and also to the charge to the jury.

Both parties claim title to the logs under a purchase from Fuller and Lindsey, the persons who cut, and originally owned the logs or claimed them.   The Plaintiff offered in evidence a certified transcript of the record of the log mark, with which the logs in question were marked, and the certificate of the Surveyor General attached, from which it appeared that the Plaintiff filed this mark for record (N. * L.), on the 19th of March, 1863, and that said mark (being the mark upon the logs in question) had not been superceded by any other mark, as appeared from the records in the Surveyor General's Office.

The Defendants offered in evidence, for the purpose of establishing their title, the following bill of sale, viz.:

"For and in consideration of the sum of four dollars and twenty-five cents per thousand feet for all logs cut by me during the winter of 1862 and '63, on the east branch of Rum river, marked N. * L , containing seven hundred thousand and seven hundred feet as per bill of the Surveyor General, with the exception of one hundred and seventy-five thousand feet to be stopped at St. Francis, the balance of the said logs we have bargained, sold and delivered to Henry Hurlbut, of Minneapolis, Hennepin county, Minnesota, at the abovenamed price of four dollars and twenty-five cents per thousand feet.   Payments to be made as follows: one-quarter down, (the receipt whereof I hereby acknowledge,) one-quarter in thirty days, one-quarter in sixty days, and the balance in ninety days from date."

The instrument was signed by Fuller and Lindsey, and dated the 16th day of March, 1863, and was filed for record in the Surveyor's General's Office, March 20, 1863.

The Plaintiff in rebuttal offered in evidence the following instrument, viz.:

"Memorandum of an agreement made the 26th day of February, 1863, by and between John Martin of St. Anthony, and M. J. Fuller of St. Francis, all of Minnesota. The said Fuller sells to me, said Martin, all the logs cut this season, marked N. * L., at the price of. four dollars per M, scaled here by the Surveyor General or his deputy. Payments to be ¼ down, (before team goes out,) ¼ 1st of June, ¼ 1st of August, and the last the first of September this year.

"It is understood that enough logs are to be left at St. Francis to pay the stumpage on said logs at four dollars per M, to be of an average quality."

This agreement was signed by the parties and bore date February 26, 1863.

It appears from the case that the parties who cut these logs never filed the mark for record, nor does it appear ever to have been filed for record except by the Plaintiff on the 19th of March, 1863. In purchasing these logs, therefore, neither Plaintiff nor Defendant were affected by any record notice of the log mark. And the rights of. the parties must be determined without reference to the provisions of the recording acts, inasmuch as the purchase by Hurlbut was previous to the record of the mark by the Plaintiff.

Under this state of facts the first important question presented is, whether the contract between the Plaintiff and Fuller and Lindsey of the 26th of February, 1863, vested the former with the title to the logs in question, or was merely an executory contract, giving the Plaintiff only an action for damages for breach thereof by Fuller and Lindsey.

From the evidence in the case, which was uncontradicted, it appears that at the time the contract between the Plaintiff and Fuller and Lindsey was made, the logging season was not over, and that the parties were then at work cutting and hauling the logs mentioned in the contract, and so continued until about the middle of March. The Plaintiff himself swears that these logs

were not all cut at the time of making this contract. And it appears to have been the understanding (according to the evidence of Brown, a witness on the part of the Plaintiff, and who witnessed the agreement) that the parties were to continue cutting and hauling, and "the balance of the logs not then cut should be an average of those that were cut, and we went over those logs, and looked over them very carefully in order to know that those to be cut would be as good as those then hauled."

Considering this testimony in connection with the agreement, it clearly appears that the contract between Plaintiff and Fuller and Lindsey, was executory in its character and did not vest the former with the title to the logs. The contract was to purchase all the logs that should be cut during the season, and the season was not at the time of making the contract ended, and a part of the property bargained for by Plaintiff was not then in existence, that is, not as personal property in the form of logs. The contract does not on its face profess to make delivery, nor in fact could there be, a delivery until the vendors had cut and hauled the balance of the logs. The contract shows that no payment was made at the time of its execution, nor had the logs then been scaled, so that it could not be determined what amount was to be paid, although the instrument shows that it was understood between the parties that one-quarter should be paid down, that is, before delivery.

In *McDonald vs. Hewett*, 15 *John.*, 349, it was held that "where, after a sale of goods, some act remains to be done by the vendor before delivery, the property does not vest in the vendee, but continues at the risk of the vendor." And in *Joyce vs. Adams*, 4 *Sel.*, 291, it is held that "it is a general rule of law, that where a contract is made for the purchase of goods, and nothing is said about payment or delivery, the property passes immediately, so as to cast upon the purchaser all future risk, if nothing further remains to be done to the goods, although he cannot take them away without paying the price. But if anything remains to be done on the part of the seller, as between him and the buyer, such as weighing, measuring, or counting out of a common parcel, before

the goods purchased are to be delivered, until that is done the right of property has not attached in the buyer." To the same effect is *Kent*, 2 *Com.*, 485, who says, that "if anything remains to be done, as between the seller and the buyer, before the goods are to be delivered, a present right of property does not attach in the buyer." And also, *Hanson vs. Meyer*, 6 *East's Rep.*, 614; *Whitehouse vs. Frost*, 12 *East*, 614; *Simmons vs. Swift*, 5 *Barn. & Cress.*, 857; *Rapelye vs. Mackie*, 6 *Cow.*, 250; *Long on Sales*, 267; *Downer vs. Thompson*, 2 *Hill*, 137; 21 *Barb.*, 199. In short, there seems to be no conflict of authorities as to the principle, and the only question which can arise is as to whether the particular case falls within it.

But aside from the evidence I think the instrument on its face is an executory contract, and does not show a completed sale. It purports to be a "memorandum of agreement," and is signed by all the parties, which is not the form of a mere bill of sale. It shows by its terms that no payment was made at the time it was executed, but that a payment was to be made *down*, that is, before delivery, and before the team went out of the woods. It shows that the logs had not then been scaled, and that a part of the logs had not been sold, but were to be retained for stumpage, and these logs were to be of average quality. In *Terry vs. Wheeler*, 25 *N. Y.*, 520, there was a sale of lumber, in which the quantity was specified and the prices carried out, and at the bottom was written, "Rec'd payment as above, E. B. Wheeler." And underneath this the memorandum, "To be delivered to the cars free of charge," signed by the vendor. It was held, that an agreement by the vendor of chattels to transport them to a place named for delivery, does not render executory a contract of sale otherwise completed on his part. But the court say, that if the lumber had not been paid for, and the instrument, *omitting the receipt*, had been signed by the Defendant and delivered, as a note or memorandum of sale, it then would have been the evidence of a contract, executory on the one part at least, and not open to explanation by parol." And again, "if the payment was to be made on or after delivery, at a particular place, it might fairly be

Martin v. Hurlbut, et als.

inferred that the contract was executory, until such delivery; but where the sale appears to be absolute, the identity of the thing fixed, and the price for it paid, I see no room for the inference that the property remains the seller's merely because he has engaged to transport it to a given point." Within the principle here stated, the contract must be deemed executory, and not a completed sale, which passed the property, since the property does not pass absolutely unless the sale be completed. 1 *Par. on Con.*, 441.

In either view of the case, therefore, we think the Plaintiff failed to show title under his contract of February 26, and it therefore becomes unnecessary to examine the other errors alleged, as the verdict was correct.

We are unable to determine from the paper book from what the appeal was taken. It appears that upon the rendition of the verdict the Plaintiff gave notice in open court of a motion for a new trial upon a case to be prepared and settled, and that twenty days were granted in which to prepare and serve a case. It does not appear whether the motion was ever heard, or whether judgment has been entered on the verdict, or whether neither has been done. We have considered the case, however, as the Defendant has not objected to the imperfect record, though we are unable to determine whether there is any order or judgment of the court below to affirm.