## MALACHI SHEEHAN v. FIRST NATIONAL BANK OF WASECA AND ANOTHER.[1]

May 22, 1925.

No. 24,495.

**When claim of homestead fails as against attaching creditor.**

1. As against an attachment, a claim to' a homestead, made by a debtor who failed to file the notice prescribed by section 8342, G. S. 1923, cannot be sustained unless it appears that, within six months immediately preceding the levy, the debtor actually resided in and occupied the dwelling house. If his occupancy ceased more than six months prior to the levy and had not been resumed, he lost his homestead right, even though he intended to return later and in the meantime kept some of his personal effects in a room reserved for his own use.

**Finding of abandonment sustained.**

The application of these rules to the facts disclosed by the evidence justified the court in holding that there had been an abandonment of the homestead at the time of the levy.

**Findings should not include evidentiary facts.**

2. Findings should embrace only ultimate facts which relate to the issues to be tried and should not intermingle evidentiary facts.

**Motion to vacate attachment.**

3. The truth of an affidavit for attachment should be challenged by motion to vacate the writ.

**Lien of attaching creditor not affected by debtor's bankruptcy after four months.**

4. The lien acquired by a creditor, who causes the land of the debtor to be attached, is not affected by bankruptcy proceedings instituted more than four months thereafter. Notwithstanding the debtor's subsequent discharge in bankruptcy, the lien may be enforced by execution.

[1]Reported in 204 N. W. 38.

**Findings valid when filed day after judge ceased to hold office.**
    5.  The failure to file findings made by a district judge until the day
after he ceased to hold office did not affect the validity of the findings.

1. See Homestead, 29 C. J. p. 941, § 360; p. 963, § 405.
2. See Trial, 38 Cyc. pp. 1969, 1981.
3. See Attachment, 6 C. J. p. 424, § 990.
4. See Bankruptcy, 7 C. J. p. 192, § 289; p. 411, § 731.
5. See Trial, 38 Cyc. p. 1962.

Action in the district court for Waseca county to restrain an execution sale of land. The case was tried before Converse, J., who ordered judgment in favor of defendants. Plaintiff appealed from an order denying his motion for a new trial. Affirmed.

*Leach & Leach,* for appellant.

*Gallagher, Madden & Gallagher* and *Meighen, Knudson & Sturtz,* for respondent.

LEES, C.

This is a suit to restrain an execution sale of 80 acres of farm land in Waseca county, which plaintiff claims as his homestead.

The court made extended findings of fact, in effect as follows: The land was attached at the suit of the plaintiff bank on March 17, 1921. On November 7, 1921, judgment was entered, and in February, 1923, the execution was issued, the levy made and the notice of sale given.

Plaintiff became the owner of the land in 1896 and resided on it until 1911, when he leased it to a man named Williams. Williams and his family occupied the dwelling house until the fall of 1923, but at all times plaintiff reserved a bedroom for his own use. At one time during Williams' tenancy plaintiff spent about three weeks on the farm when a building was erected, and at another time about ten days, when some painting was done. In other years he visited the farm once or twice and sometimes oftener. On these occasions he sometimes stayed at the house over night.

After 1911 plaintiff had an interest in a business in the city of Waseca for a number of years, and also bought live stock and shipped it to South Dakota, where he sold it. His headquarters

were at Waseca, but finally he moved to Fort Pierre, South Dakota, where for several years prior to the levy of the attachment he was engaged in buying and selling live stock. After 1911 he ceased to receive his mail at the post office which served the farm neighborhood. He voted at Waseca several times, and at the general election in 1920 applied for and received an absent voter's ballot to be cast at Fort Pierre, but was there on election day and did not use the ballot. In 1918 he executed a bail bond as surety and in the justification made oath that he was a resident and freeholder of South Dakota. In 1919 he signed articles of copartnership, in which he recited that he was a resident of Fort Pierre. In the years 1919 and 1920 he executed 11 chattel mortgages in which he was described as a stockman residing in Stanley county, South Dakota. On March 14, 1921, he executed a deed of land in Waseca county, in which he stated that his residence was Stanley county, South Dakota. On March 12, 1921, he went from Waseca to South Dakota to dispose of the remainder of his herd of cattle, returning in the latter part of April with his personal effects, and he has since lived on the farm and worked for his tenant to pay for his board.

The court found specifically that prior to the levy of the attachment plaintiff abandoned his homestead and did not resume the actual occupancy thereof until after March, 1921; that he did not occupy it when the attachment was levied, and at no time filed the statutory notice claiming the land as his homestead. The conclusion of law was that the land was not exempt from levy and sale to satisfy the bank's judgment. Most of the findings are attacked on the ground that they are not supported by the evidence.

Plaintiff testified that he always intended that the farm should be his homestead and that his stay in South Dakota was temporary and for no other purpose than to look after the cattle in which he had an interest.

It appears that the fall in the price of cattle which occurred in 1920 compelled plaintiff to go into bankruptcy in March, 1922. He included the Waseca county land in his schedule of assets and claimed it as exempt, and listed the bank's judgment in the schedule

of his liabilities.   In August, 1922, he obtained a discharge of his debts in the bankruptcy proceeding.

The sufficiency of the evidence to support the particular finding which determined the case in the court below is to be considered largely in the light of the events which took place between the latter part of December, 1920, and March 17, 1921.   At the time first mentioned plaintiff came from South Dakota to Waseca county, where he spent the months of January, February and part of March. During the greater portion of that time he visited relatives, but on several occasions he went to the farm and stayed there a number of days and nights.

If the farm was plaintiff's homestead on March 17, it was exempt from attachment and no lien was acquired by the levy under the writ.   Beigler v. Chamberlin, 145 Minn. 104, 176 N. W. 49.   To sustain his claim it was necessary that plaintiff should prove that at some time within the period of six months immediately preceding March 17, 1921, he actually resided on and occupied the farm, mere possession or the right of possession not being sufficient to sustain the claim.   Clark v. Dewey, 71 Minn. 108, 73 N. W. 639; Kramer v. Lamb, 84 Minn. 468, 87 N. W. 1024.

Under section 8342, G. S. 1923, the failure to file the notice for which the statute provides results in the loss of the homestead exemption if, for a period of six months or more, the owner ceases to occupy the dwelling house as his residence, even though he intended to return later and in the meantime kept some of his personal effects in a room in the house which he reserved for his own use.   Quehl v. Peterson, 47 Minn. 13, 49 N. W. 390; Hall v. Holland, 138 Minn. 403, 165 N. W. 235.

It has always been the policy of this court to favor the preservation and retention of a debtor's right to claim a homestead; hence the rule is that to justify a finding that the right has been lost by abandonment, the evidence must be clear and convincing.   Stewart v. Rhoades, 39 Minn. 193, 39 N. W. 141.

We have examined the evidence with this rule in mind and have reached the conclusion that it sustains the finding of abandonment prior to March 17, 1921, and nonresumption of occupancy until after that date.

Plaintiff complains of the court's refusal to amend the findings in the following particular: By adding that between December 24, 1920, and March 12, 1921, plaintiff lived and stayed on the farm several days and nights with the intent to hold and retain his homestead right therein.

Plaintiff and Williams each testified that the former occupied a room in the house over night on several occasions between the dates mentioned, and their testimony is not contradicted. Plaintiff invokes the rule applied in Goedhard v. Folstad, 156 Minn. 453, 195 N. W. 281, and Klare v. Peterson, 161 Minn. 16, 200 N. W. 817, but we think it is not applicable. Although there was no direct contradiction of the testimony, it might fairly be inferred from all the evidence in the case that plaintiff's stays were casual and infrequent and not such an actual occupancy of the farm as a home as the statute requires.

Plaintiff complains because he is unable to ascertain from the findings upon what facts the court based its decision. In the findings evidentiary facts are mingled with ultimate facts relative to the issue, a practice not to be commended. Dun. Dig. § 9851. But abandonment is found, coupled with a finding that the farm was not reoccupied as a homestead until after the attachment was levied. This determined the ultimate fact in issue and is all that is necessary to support a judgment in defendants' favor. Hayes v. Hayes, 119 Minn. 1, 137 N. W. 162.

The officer of the bank who made the affidavit for attachment admitted at the trial that the facts stated therein are not true, but no motion to vacate the writ was made. This was the only way of properly challenging the truth of the affidavit. G. S. 1923, § 9350; Nelson v. Gibbs, 18 Minn. 485 (541).

The discharge in the bankruptcy proceeding did not have the effect of vacating the lien of the attachment, which was acquired more than four months prior to the filing of the petition. See 7 C. J. 192, and cases cited. But it is urged that it did affect the judgment and destroyed the bank's right to enforce the lien except by a suit for the foreclosure thereof. Gregory Co. v. Cale, 115 Minn. 508, 133 N. W. 75, 37 L. R. A. (N. S.) 156, defeats this contention.

The case was tried by Judge Converse, who thereafter resigned his office as district judge, his resignation taking effect at midnight on March 14, 1924. The findings are dated March 14, but were not filed in the office of the clerk of the district court until March 15, 1924. In his motion for a new trial plaintiff specified as one of the grounds thereof that he had moved for amended findings and that there was no district judge who could pass upon the motion because Judge Converse had resigned. He now claims that the findings should have been set aside because they were not made by the district court of Waseca county, Judge Converse having left office before they were filed. In the motion for a new trial, the existence of findings made by a judge in office was assumed, and we think the assumption is well founded. Judge Converse disposed of the case when he signed the findings and sent them to Waseca to be filed. In filing them, a purely ministerial act was performed by the clerk, which had nothing to do with the court's jurisdiction. Moreover the findings were filed as directed by Rule 13 of the General Rules of Practice adopted by the district courts pursuant to section 182, G. S. 1923. See also Vogle v. Grace, 5 Minn. 232 (294).

Order affirmed.

WILSON, C. J., took no part.