LOUISE M. HERMAN v. WILLIAM C. KELEHAN AND OTHERS.[1]

May 1, 1942.

No. 33,120.

---

[1]Reported in 3 N. W. (2d) 587.

350

*Frank C. McGivern* and *Field & Field,* for appellants.
*Ryan, Ryan & Ryan,* for respondent.

LORING, JUSTICE.

In a suit to compel specific performance of a written contract to make a will, the trial court found for plaintiff and ordered specific performance. From the judgment entered after denial of defendants' motion for a new trial, all but the defendant Edward J. Herman appeal to this court.

Appellants' principal contentions are, first, that the evidence does not sustain a finding that there was an effective contract to make a will which was acted upon by the parties, and, second, assuming that there was such a contract, that plaintiff was not entitled to specific performance but only to the value of her services.

Anton C. Bjorke, the person who it is alleged made the contract

to make a will in favor of plaintiff, resided at Staples in Todd county. He had no relatives living nearer than Pelican Rapids. Until he retired from active business in 1937, he was a cobbler and shoe repairman and had accumulated property subsequently appraised in his estate at $5,200. His second and last wife had predeceased him in September 1937. His nearest living relative at the time of his death, October 16, 1940, was his niece Frieda Rogers, one of the defendants, who lived at Pelican Rapids. Bjorke was 78 years old when he died. The day following his death there was found in his safety deposit box a will which left $125 each to plaintiff and her husband. To Frieda Rogers of Pelican Rapids, he gave 45 per cent of his estate; to Ernest A. Carlson of Staples, 15 per cent; to Lawrence O. Odden of Staples, 15 per cent; and to William C. Kelehan, a lawyer at Staples, 25 per cent. Kelehan was named in the will as executor.

Viewed most favorably to the findings, the evidence tends to show that for several years before the death of Mrs. Bjorke in September 1937, she and her husband were intimate friends of plaintiff and her husband. During Mrs. Bjorke's last illness, plaintiff was especially neighborly, friendly, and helpful. In November following Mrs. Bjorke's death, it was apparently arranged between Bjorke and plaintiff that he should leave his own house and go to live with the Hermans as a member of their family. Pursuant to this arrangement, plaintiff went with Bjorke to Wadena to the law offices of Barron & Bradford, where an agreement was made and signed by both of them by the terms of which plaintiff agreed:

(1) To take care of Bjorke "whenever she is called upon to do so, furnishing him food, clothing, shelter, and nursing and anything necessary to give him a comfortable living.

"(2) To hold herself ready to perform these services at any time up until his death."

It was further provided:

"For and in consideration of the above agreements by party of the second part [plaintiff], party of the first part [Bjorke] agrees

to keep all of his property free and clear of encumbrances including the following described real property, to-wit:

"North 43 feet of Lot 2, and all of Lots 3, 4, 5 and 6 of Block 1, O'Connors Addition to City of Staples, Todd County, Minnesota.

"Party of the first part agrees to pay all taxes and insurance on the above described premises and to leave all of his property, real and personal, including the premises above described, to party of the second part in accordance with the terms of his last will and testament of even date herewith."

1. The testimony tends to show that both parties signed this agreement in duplicate; that a will was executed by Bjorke in accordance with the contract; that thereafter, on their return to Staples, Bjorke put both of the duplicate copies in his safety deposit box for safekeeping, but that when the box was opened after his death they were not found therein.

The executor took possession of all Bjorke's papers but did not find either the contract or the contemporaneously executed will. Resort was therefore had on the trial to the carbon copies of the agreement and will which were found in Mr. Barron's file. We think the evidence of the loss of the originals was sufficient to warrant admission of the secondary evidence of the contents. The evidence of execution by the parties was practically conclusive.

Bjorke immediately moved over to the residence of the Hermans and made his home there until his death. Apparently the parties treated the contract as delivered and in effect. It is true that Bjorke paid Mrs. Herman $20 a month. This, however, was explained by a statement which he made to one of the witnesses as follows:

"I said to him, 'I understand you were paying room and board, if you are going to leave it to them why are you paying room and board?' 'Well, I will tell you,' he said, 'I am on diet, I can't eat everything, she fix for me, they got lots of children and she got expense for me, it is going to be hers anyway, so I give it to her now and help her that much.' "

Much emphasis is placed upon plaintiff's action in not protesting against the probate of the subsequent will which was inconsistent with the contract. The fact that it was so inconsistent would not have been a valid objection to its admission to probate. Lack of protest was only a circumstance for consideration in connection with whether the contract was made. As against the clear and convincing evidence of execution and immediate performance, the court could hardly regard it seriously. The same may be said in regard to the filing of a claim by plaintiff for board, room, and services which appellants argue only on the same point. Nor can we see the relevance of the loan made by Bjorke to the Hermans.

As we view the record, the evidence was clear and convincing that the contract was executed, that it was intended by the parties to take effect at once, and that plaintiff fully performed all that she was called upon to do under the terms of the contract.

2. Appellants moved for amended findings and, amongst others, asked for a finding that the services rendered by plaintiff to Bjorke were ascertainable and compensable in money. The motion for amended findings was denied. Consequently the denial was equivalent to a finding that the services were not compensable in money. The evidence tends to show that the Hermans gave Bjorke the companionship, personal care, and attention common among members of a family living together. His statements to others indicate that he appreciated such treatment and was made happy thereby. The evidence amply supports the finding. The character of the services rendered by plaintiff made her remedy at law inadequate and entitled her to specific performance within the rule recently announced by this court in Hanson v. Bowman, 199 Minn. 70, 271 N. W. 127. See also Dill v. Kucharsky, 212 Minn. 276, 3 N. W. (2d) 585.

3. Moreover, the written contract having been established, the usual rules in regard to specific performance applied, see Whitman v. Dittman, 154 Minn. 346, 348, 191 N. W. 821; and, as real estate was involved, equity would order specific performance regardless of the nature of the services. McClintock, Equity, § 58; St. Paul

Div. No. 1 Sons of Temperance v. Brown, 9 Minn. 144 (157). The personalty included in the decree presents no problem, for, as stated in 58 C. J. p. 1044, § 274:

"Where part of an entire contract relates to personal property, and the rest to a subject-matter, such as land, over which the jurisdiction is ordinarily exercised, specific performance may be had of the contract as a whole, including the clause relating to personal property." Kuhn v. Sohns, 324 Ill. 48, 154 N. E. 401; County of Ottawa v. Zwagerman, 229 Mich. 501, 201 N. W. 463.

The judgment is affirmed with leave to either party to apply to the trial court for its correction in conformity with the opinion of this court in Jannetta v. Jannetta, 205 Minn. 266, 271, 285 N. W. 619.

Affirmed.

